NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 2:20-cr-00623 (BRM) |
| STEVEN NEWKIRK, | |
| Defendant. | **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Steven Newkirk's ("Defendant") Motion to Dismiss (ECF No. 63) the Indictment (ECF No. 30) for being unconstitutional on its face and as applied to Defendant. The United States of America ("Government") filed an Opposition on February 15, 2024. (ECF No. 67.) Defendant filed a reply on April 18, 2024. (ECF No. 81.) Defendant filed a supplemental letter regarding an additional authority on May 11, 2024. (ECF No. 86.) Defendant filed a further response in support of the Motion on June 25, 2024. (ECF No. 90.) The Government filed supplemental letters on July 1, 2024 and July 2, 2024 highlighting new authorities. (ECF Nos. 91, 92.) Having reviewed the parties' submissions filed in connection with the Motion and having held oral argument on July 3, 2024 (ECF No. 94), for the reasons set forth below and for good cause having been shown, Defendant's Motion to Dismiss the Indictment is **DENIED**.

**I.     BACKGROUND**

    **A.     Factual Background**

For the purpose of this motion to dismiss, "the district court accepts as true the factual allegations set forth in the indictment." *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990).

Defendant is charged with possession of a "Smith & Wesson SD 40-Model firearm, bearing serial number FYZ9742, and thirteen (13) .40 caliber hollow point rounds of ammunition" in violation of 18 U.S.C. § 922(g)(1) ("§ 922(g)(1)"). (ECF No. 30 at 1.) The charge is premised on Defendant's prior conviction on March 14, 2011 "of distribution of [a Controlled Dangerous Substance] on or within 1,000 feet of school property in violation of N.J. Stat. Ann. § 2C:35-7." (ECF No. 67 at 3; ECF No. 1 at 1.) The Indictment stems from an investigation of the Essex County Prosecutor's Office ("ECPO") of Defendant and others for drug trafficking out of Defendant's apartment. (ECF No. 67 at 1.) Law enforcement witnessed drugs being sold from Defendant's apartment, and a confidential informant alleged he saw Defendant sitting in the living room next to a handgun. (*Id.*) ECPO officers allegedly found drugs and large quantities of cash on Defendant and others shortly after they left Defendant's apartment. (*Id.* at 1–2.)

The ECPO obtained a warrant to search Defendant's apartment based on this information. (*Id.* at 2.) ECPO officers executed the warrant at approximately 5:30 am on April 17, 2019. (*Id.*; ECF No. 1 at 1.) ECPO officers discovered 100 grams of marijuana in a rear bedroom, as well as drug paraphernalia and heroin packaged for distribution inside a hallway closet and other common areas. (ECF No. 67 at 2.) ECPO officers discovered Defendant in his bedroom at the front of the apartment. (*Id.*) Within Defendant's bedroom, the ECPO officers located a safe openable via electronic keypad or key. (*Id.*) The ECPO officers asked Defendant for the code to open the safe, but Defendant provided a wrong code. (*Id.*) The ECPO officers located the key to the safe on top of a dresser in Defendant's bedroom and opened the safe using the key. (*Id.*)

Inside the safe, the ECPO officers found, among other things, "(i) a Smith & Wesson SD 40-Model handgun, bearing serial No. FYZ9742, which was loaded with 13 .40-caliber hollow point bullets in the magazine; (ii) three .40-caliber ballpoint rounds; (iii) a packaged toothbrush

2

. . . and (iv) numerous empty glassine envelopes." (*Id.*; ECF No. 1 at 1.) The firearm and ammunition were manufactured outside New Jersey. (ECF No. 67 at 3; ECF No. 1 at 1.) ECPO officers also recovered from elsewhere in Defendant's bedroom, "(i) [Defendant]'s birth certificate; (ii) various other paperwork bearing [Defendant]'s name; (iii) $2,970 in cash; and (iv) [Defendant]'s cell phone." (*Id.* at 3.) During a recorded call from jail, Defendant allegedly recounted the police raid on his apartment earlier that day and stated, "I had my f*****g gun in my safe." (*Id.* at 2–3.)

### B. Procedural History

The Complaint was filed on April 24, 2019. (ECF No. 1.) Defendant was arrested on April 29, 2019. (ECF No. 5.) The Indictment was filed on July 21, 2020. (ECF No. 30.) Defendant was arraigned on August 6, 2020. (ECF No. 33.)

On January 31, 2024, Defendant filed various pre-trial motions before the Court. (ECF No. 62.) Defendant filed the present Motion to Dismiss the Indictment on February 6, 2024. (ECF No. 63.) The Government filed an Opposition to the pre-trial motions, and the Motion to Dismiss, on February 15, 2024. (ECF No. 67.) Defendant filed a reply for the Motion to Dismiss on April 18, 2024. (ECF No. 81.) Defendant filed a supplemental letter regarding an additional authority on May 11, 2024. (ECF No. 86.) Defendant filed a further response in support of the Motion on June 25, 2024. (ECF No. 90.) The Government filed supplemental letters for the Motion to Dismiss on July 1, 2024 and July 2, 2024 highlighting new authorities. (ECF Nos. 91, 92.)

Defendant filed a Motion for Sanctions on April 7, 2024 requesting the exclusion of a jailhouse phone recording and a hearing on the parameters for cross-examination of Defendant. (ECF No. 80.) The Government filed an Opposition on April 18, 2024. (ECF No. 82.) Defendant filed a reply on April 22, 2024. (ECF No. 83.)

The Court held oral argument on all pending motions on July 3, 2024. (ECF No. 94.) On July 8, 2024, the Court entered an order granting in part, denying in part, and reserving in part, Defendant's pre-trial motions, Motion to Dismiss, and Motion for Sanctions. (ECF No. 95.)

**II.     LEGAL STANDARD**

A defendant may bring a motion to dismiss counts in the indictment under Federal Rule of Criminal Procedure 12. Fed. R Crim. P. 12(b)(1); *United States v. Boone*, No. 22-233, 2024 WL 965146, at *2 (D.N.J. Mar. 6, 2024).

When raising a facial constitutional challenge to a statute, the moving party must show the law "'could never be applied in a valid manner[,]' and as such, must be struck down in its entirety." *Boone*, 2024 WL 965146, at *2 (quoting *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 797–98 (1984)). "A [moving party] asserting a facial challenge 'seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the statute in question.'" *Green Party of Pa. v. Aichele*, 89 F. Supp. 3d 723, 737 (E.D. Pa. 2015) (quoting *City of Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999)). Therefore, the moving party must meet the "particularly demanding" standard of showing there is "'no set of circumstances' that exists under which the statute at issue would be valid." *Green Party of Pa.*, 89 F. Supp. 3d at 737 (quoting *Heffner v. Murphy*, 745 F.3d 56, 65 (3d Cir. 2014)).

An as-applied challenge "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Miller v. Sessions*, 356 F. Supp. 3d 472, 480 (E.D. Pa. 2019) (quoting *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011)). In the Third Circuit, courts now engage in a two-step analysis of as-applied challenges based on the Second Amendment. The Court will first decide whether "the Second Amendment's plain text covers an individual's conduct." *United*

*States v. Dorsey*, No. 23-2125, 2024 WL 3196742, at *3 (3d Cir. June 24, 2024). Courts often divide this first step into two parts, evaluating first whether the Second Amendment applies to the person, and then whether the Second Amendment covers the conduct in question. *See United States v. Hedgepeth*, No. 22-377, 2023 WL 7167138, at *4 (E.D. Pa. Oct. 31, 2023) (separately evaluating the issue of whether the Second Amendment covered defendant as a person from the issue of whether the Second Amendment covered the conduct); *United States v. Jenkins*, No. 23-088, 2023 WL 6534200, at *16 (E.D. Pa. Oct. 6, 2023) (same); *United States v. Perez*, No. 22-55, 2024 WL 579115, at *2 (D. Del. Feb. 13, 2024) (same). If the moving party makes this showing, the Government must then "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Dorsey*, 2024 WL 3196742, at *2 (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 19 (2022)).

### III. DECISION

#### A. Facial Challenge

Defendant raises both an as-applied and facial challenge to the Indictment based on the Second Amendment. (ECF No. 63-1 at 2.)

The Government asserts Defendant's facial challenge to § 922(g)(1) should fail, as there are clearly circumstances where § 922(g)(1) would be constitutional, particularly for the most violent felonies such as first-degree murder. (ECF No. 67 at 10–11.)

Defendant's facial challenge to the constitutionality of § 922(g)(1) fails because courts have clearly found there are circumstances where the application of the statute is constitutional. For a facial challenge to succeed, the moving party must show the law "'could never be applied in a valid manner[,]' and as such, must be struck down in its entirety." *Boone*, 2024 WL 965146, at *2 (quoting *Members of City Council of L.A.*, 466 U.S. at 797–98). The Supreme Court has stated

5

that the "the right secured by the Second Amendment is not unlimited," and has held that its opinion in *Heller* should not be taken "to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *District of Columbia v. Heller*, 554 U.S. 570, 626–27 (2008). This language is "not dicta." *United States v. Barton*, 633 F.3d 168, 171 (3d Cir. 2011) (quoting *United States v. Rozier*, 598 F.3d 768, 771 n.6 (11th Cir. 2010)), *rev'd on other grounds*, *Binderup v. Att'y Gen. United States of America*, 836 F.3d 336 (2016). The Supreme Court's decision in *Bruen* did not overturn this holding; rather, that decision was meant to build upon the Supreme Court's previous Second Amendment jurisprudence. *See United States v. Morales*, No. 22-161, 2023 WL 6276672, at *3 (M.D. Pa. Sept. 26, 2023) ("*Bruen* did not invalidate, alter, or overturn the legal principles and analysis set forth in *Heller* and *McDonald*."); *United States v. Canales*, No. 21-226, 2023 WL 8092078, at *8 (E.D. Pa. Nov. 20, 2023) (same) (quoting *Morales*, 2023 WL 6276672, at *3); *United States v. Winters*, No. 22-112, 2024 WL 579077, at *2 (D. Del. Feb. 13, 2024) (same) (quoting *Canales*, 2023 WL 8092078, at *8). To the extent the vacated Third Circuit opinion in *Range* overturned § 922(g)(1) as applied to the appellant in the case,[1] that decision was intended to be "narrow" and apply only to people "like Range." *Range v. Att'y Gen. United States of America,* 69 F.4th 96, 106 (3d Cir. 2023), *rev'd*, *Garland*, 2024 WL 3259661 (Mem), at *1.[2] The Third Circuit further confirmed the narrowness of *Range* in *Dorsey*, where it

---

[1] The Supreme Court granted certiorari and vacated *Range* "for further consideration in light of *United States v. Rahimi*." *Garland v. Range*, No. 23-374, 2024 WL 3259661, at *1 (2024).

[2] To the extent the Ninth Circuit held § 922(g)(1) to be unconstitutional as applied in *United States v. Duarte*, that holding was based on the same narrow grounds as the Third Circuit decision in *Range*, in that the defendant's crimes (vandalism, felon in possession of a firearm, possession of a controlled substance, and two convictions for evading a peace officer) were not of sufficient severity to be analogous to historical reasons for felon disarmament. *United States v. Duarte*, No. 22-50048, 2024 WL 2068016, at *2, *24 (9th Cir. May 9, 2024) ("Based on this record, we cannot say that [defendant's] predicate offenses were, by Founding era standards, of a nature serious enough to justify permanently depriving him of his fundamental Second Amendment rights.").

stated "*Range* held only that disarming an individual with a single, almost-thirty-year-old criminal conviction for food stamp fraud was not consistent with the Second Amendment" and further emphasized the decision was a "narrow one." *United States v. Dorsey*, Civ. A. No. 23-2125, 2024 WL 3196742, at *3–4 (3d Cir. June 24, 2024). Moreover, after the *Range* decision, numerous courts in the Third Circuit found § 922(g)(1) to be constitutional in various circumstances. *See Hedgepeth*, 2023 WL 7167138, at *4–9 (finding § 922(g)(1) constitutional when applied to a person who has "shown a proclivity toward violence and an inability to safely hold firearms," thereby denying both as-applied and facial challenges to the statute); *Boone*, 2024 WL 965146, at *4–8 (D.N.J. Mar. 6, 2024) (denying facial and as-applied challenge to § 922(g)(1) as "[c]onsidering the same historical analogues, courts in this circuit roundly agree that [§] 922(g)(1) is consistent with this Nation's historical tradition of firearm regulation as applied to individuals, like Defendant, who have sustained prior felony convictions for drug trafficking"); *United States of America v. Divine Zion*, No. 22-527, 2024 WL 1975497, at *5–7 (D.N.J. May 3, 2024) (denying both facial and as-applied challenge to § 922(g)(1), noting that "Courts in the Third Circuit have, even after *Range*, found almost uniformly that bans on possession of firearms by a person previously convicted of crimes is constitutional").

Accordingly, because numerous courts have found § 922(g)(1) to be constitutional when applied to diverse situations, Defendant's facial challenge to § 922(g)(1) is **DENIED**.

### B. As-Applied Challenge

#### 1. Briefing and Analytical Procedure for the Claim

Defendant raises both an as-applied and facial challenge to the Indictment based on the Second Amendment. (ECF No. 63-1 at 2.) Defendant argues that, although he is a convicted felon, he is protected by the Second Amendment, both as a person and in his conduct of possessing a

7

firearm in his home. (*Id.* at 3–5.) Defendant further argues the analysis of the nation's historical tradition requires an individualized assessment of Defendant's "dangerousness." (*Id.* at 3.) Defendant asserts the Court should assess the "dangerousness" of Defendant's prior felonies by assessing whether such felonies were violent or non-violent. (*Id.* at 3–4.) In this case, Defendant claims his criminal record shows no risk of violence, as his prior offense was for "minor drug sales," a non-violent crime. (*Id.* at 5.) Moreover, Defendant argues he has not otherwise shown a risk of violence, as his arrest was non-violent, and he has never been convicted of improper use of weapons. (*Id.*) Therefore, Defendant concludes that his "prior conduct does not support a finding that he poses a risk to public safety such that he cannot be trusted to use a weapon responsibly and should be deprived of his Second Amendment right to bear arms in self-defense." (*Id.*)

The Government emphasizes the Third Circuit's ruling in *Range* was narrow, and Defendant does not fall under its scope because he has not shown a lawful purpose for possessing the firearm or that the application of § 922(g)(1) is inconsistent with the nation's historical tradition of firearms regulation. (ECF No. 67 at 4–5.) The Government claims that Defendant must show a lawful purpose for possessing a gun, which Defendant has not attempted to do. (*Id.* at 5–6.) The Government argues the circumstances of the firearm seizure weigh against Defendant having a lawful purpose for gun possession, since "police found the gun in a safe next to a pile of glassine envelopes, which are used to package drugs, in an apartment out of which [Defendant] and others sold drugs." (*Id.* at 6–7.) The Government asserts Defendant could meet his burden of showing a valid Second Amendment purpose for possessing the firearm by making a proffer of evidence under the exclusionary rule of *Simmons v. United States*, 390 U.S. 377 (1968). This would allow Defendant to show his purpose under the Second Amendment without having such evidence used against him in subsequent prosecution. (*Id.* at 7 n.1.) On the issue of historical analogues to §

8

922(g)(1), the Government argues the statute remains "presumptively lawful" under *District of Columbia v. Heller*, 554 U.S. 570 (2008). (*Id.* at 8.) The Government notes the combination of firearms and drug trafficking, as this Court found in *Porter v. United States*, Civ. A. No. 22-6199, 2023 WL 6366273, at *10 (D.N.J. Sep. 28, 2023), leads to a heightened risk of violence and threat to public safety. (*Id.* at 9–10.) The Government claims courts have previously found that drug traffickers use firearms "to protect drug stockpiles, to preempt encroachment into a dealer's 'territory' by rival dealers, and for retaliation." (*Id.* at 10 (quoting *United States v. Luciano*, 329 F.3d 1, 6 (1st Cir. 2003))). Therefore, the Government asserts Defendant "is the type of potentially dangerous person to which our laws have historically applied." (*Id.* at 10.)

Defendant replies that when, as here, the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct, and it is for the Government to then identify a historical analogue regulating the conduct. (ECF No. 81 at 2.) Therefore, Defendant does not bear the burden of showing that his purpose for possessing a firearm was constitutionally protected. (*Id.* at 2–3.) Defendant also notes that, although the Government argues he possessed the firearm in furtherance of drug trafficking, he has not been charged with any such offenses in this case. (*Id.* at 3.) Defendant claims no drugs were ever discovered in his vehicle when it was stopped, and there is no evidence of drug distribution by Defendant. (*Id.* at 3–4.) Defendant disputes certain aspects of the confidential informant's affidavit stating that Defendant was in the home with the gun when drug purchases took place, noting that, although he was alleged to be watching television in the living room, no such television existed, and it is further unreasonable to think that Defendant was directing the location of drug sales in the home. (*Id.* at 4.) Therefore, Defendant argues there is no heightened risk of violence from his possession of the firearm, as there is no evidence it was being used in furtherance of drug trafficking. (*Id.* at 4–5.)

9

Finally, Defendant argues that using his non-violent 14-year-old criminal history to impose a status-based bar on his firearm possession is inconsistent with the nation's historical regulation of firearm ownership, which did not impose status-based bans on firearm ownership against convicted felons, instead focusing on individualized assessments and seizing the instrumentalities of crime. (*Id.* at 5–6.)

Defendant's first supplemental letter highlights *Duarte* and notes that the case held that § 922(g) was unconstitutional as applied to an individual with non-violent prior felonies. (ECF No. 86 at 1.) Defendant also asserts the court held § 922(g) was unconstitutional as applied even though the defendant in *Duarte* had more felony convictions than the defendant in *Range*. (*Id.*)

In a second supplemental letter, Defendant states that the Supreme Court's decision in *United States v. Rahimi*, 144 S.Ct. 1889 (2024), continued to rely on originalism and a comparison of present-day laws to founding era restrictions on firearms. (ECF No. 90 at 1–2.) Defendant asserts that the Supreme Court held the prohibition on Rahimi's gun ownership was constitutional partly because it was only temporary rather than permanent. (*Id.*) Moreover, Defendant argues the Supreme Court's decision in that case was grounded on a domestic violence based restraining order against Rahimi, which meant that the court found Rahimi posed "a credible threat to the physical safety of another." (*Id.* (quoting *Rahimi*, 144 S.Ct. at 1896)). Defendant claims the Supreme Court's holding in *Rahimi* is consistent with the Third Circuit's decision in *Range*, as it found that "regulations targeting longstanding problems must be 'distinctly similar' to a historical analogue." (*Id.* at 2–3.) Defendant continues to claim that he has not been charged with or convicted of any violent offenses or conduct and cites to various cases holding that non-violent felons are not categorically excluded from firearm ownership. (*Id.* at 3.)

The Government provided notices of supplemental authority alleging new precedent in support of their arguments. The first notice focuses on *Rahimi*, which held that "prohibition on firearm possession while subject to a domestic violence restraining order is constitutional" based on historical analogies to surety and "armed" laws and warned courts against applying too strict a comparison between modern and historical laws in the historical analysis. (ECF No. 91 at 1–2.) The first notice also discusses *Dorsey*, which emphasized the narrowness of the Third Circuit's holding in *Range*, noting that the Second Amendment did not necessarily protect all persons whose criminal history consists only of non-violent offenses. (*Id.* at 2.) The second notice highlights that the Supreme Court vacated the Third Circuit's decision in *Range*, returning the decision to the Third Circuit for further consideration in light of *Rahimi*. (ECF No. 92 at 1.)

Defendant primarily challenges the constitutionality of § 922(g)(1) as applied to his case. Here, Defendant's charge under § 922(g)(1) was based on a prior criminal conviction on March 14, 2011 for "distribution of [a Controlled Dangerous Substance] on or within 1,000 feet of school property in violation of N.J. Stat. Ann. § 2C:35-7." (ECF No. 67 at 3; ECF No. 1 at 1.)

In the Third Circuit, courts engage in a two-step analysis of as-applied challenges premised on the Second Amendment. The Court first determines whether the Second Amendment's "plain text covers an individual's conduct." *Dorsey*, 2024 WL 3196742, at *3 (quoting *Bruen,* 597 U.S. at 17). If the moving party makes this showing, the Government then "must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Dorsey*, 2024 WL 3196742, at *3 (quoting *Bruen,* 597 U.S. at 19).

### 2. Whether the Second Amendment Protects Defendant as a "Person"

The Second Amendment protects Defendant as a "person," as it is well established in the Third Circuit that persons with a felony conviction continue to maintain Second Amendment

rights. *See United States v. Velazquez*, No. 23-657, 2024 WL 49690, at *12 (D.N.J. Jan. 4, 2024) ("Unquestionably, Velazquez is one of 'the people' within the meaning of the Second Amendment . . . . His prior felony convictions and that he was on supervised release do not diminish that finding."); *United States v. Quailes*, No. 21-0176, 2023 WL 5401733, at *8 (M.D. Pa. Aug. 22, 2023) (holding that defendant possessed Second Amendment rights despite prior felony drug trafficking convictions); *Porter*, 2023 WL 6366273, at *4 (holding the Second Amendment protected all Americans, not just law-abiding citizens). Accordingly, the Second Amendment protects Defendant as a person despite his prior felony convictions.

### 3. Whether the Second Amendment Protects Defendant's "Conduct"

The Court proceeds to assess whether the Second Amendment covers Defendant's "conduct" in this case. Courts in the Third Circuit examine whether a defendant's intentions in owning a firearm, or, in other words, the defendant's "conduct," comports with the conduct the Second Amendment is intended to protect. *Dorsey*, 2024 WL 3196742, at *4 (quoting *Range*, 69 F.4th at 101–03) (noting that *Range* held the Second Amendment protects the conduct of owning firearms for hunting and self-defense). Courts in this circuit have held that the Second Amendment does not protect the possession of a gun in furtherance of criminal activity, such as drug trafficking. *See Jenkins*, 2023 WL 6534200, at *16 ("The question is, '[i]ndependent of [§] 922(g)(1), is the conduct itself "Second Amendment conduct"?' The answer to that question must be more specific than 'carrying a gun,' because . . . it is beyond dispute that at least some purposes for carrying a gun are not Second Amendment conduct."); *United States v. Adams*, No. 23-122, 2024 WL 54112, at *7 (M.D. Pa. Jan. 4, 2024) ("[T]he Second Amendment does not apply to the proposed use of firearms for criminal exploits, such as possessing firearms in furtherance of trafficking drugs."); *United States v. Eddings*, Civ. A. No. 21-117, 2023 WL 7194772, at *3 (W.D. Pa. Nov. 1, 2023)

(holding the Second Amendment did not cover defendant's conduct as "[d]efendant's conduct of possessing a firearm and ammunition in a vehicle with drug paraphernalia, and while [d]efendant himself possessed drug paraphernalia, establishes [d]efendant as a person who is dangerous to the safety of the public and is disruptive to the orderly functioning of society"); *United States v. McBroom*, Civ. A. No. 21-97, 2023 WL 7221400, at *3 (W.D. Pa. Nov. 2, 2023) (same).

Here, although the Government claims Defendant's firearm possession was in furtherance of drug trafficking (ECF No. 67 at 9–10), the Court does not find the Defendant's possession of the firearm was for an improper purpose, as there is no allegation of Defendant's drug trafficking on the face of the Indictment. In a motion to dismiss, the Government is only entitled to a presumption of truth for facts stated in the indictment. *See United States v. Menendez*, 132 F. Supp. 3d 635, 643 (D.N.J. 2015) (quoting *United States v. Huet*, 665 F.3d 588, 595–96 (3d Cir. 2012)); *United States v. Mosberg*, 866 F. Supp. 2d 275, 286 (D.N.J. 2011); *United States v. Stock*, 728 F.3d 287, 299 (3d Cir. 2013) ("In evaluating a Rule 12 motion to dismiss, a district court must accept as true the factual allegations set forth in the indictment." (quoting *Huet*, 665 F.3d at 595)). The Court is not bound to and generally should not accept the truth of descriptions of conduct not included in the indictment. *See Stock*, 728 F.3d at 299 ("The description of certain conduct was part of the statement that [defendant] allegedly made, not a second factual allegation. Thus, under normal circumstances, we would agree that, to the extent the District Court assumed that the communication was an admission . . . it did so in error."); *United States v. Jones*, No. 21-472, 2024 WL 776470, at *2 (W.D. Pa. Feb. 26, 2024) ("A court's 'consideration of a challenge under Federal Rule of Criminal Procedure 12(b)(3)(B) is confined to the facts alleged in the indictment.'" (quoting *Stock*, 728 F.3d at 290 n.1)); *United States v. Taylor*, No. 19-303, 2023 WL 5417247, at *6 (W.D. Pa. Aug. 22, 2023) (same (quoting *United States v. Miah*, 546 F. Supp. 3d 407, 418

(W.D. Pa. 2021))). Here, the Indictment only details one charge regarding possession of a "Smith & Wesson SD 40-Model firearm, bearing serial number FYZ9742, and thirteen (13) .40 caliber hollow point rounds of ammunition" in violation of § 922(g)(1). (ECF No. 30 at 1.) It includes no information regarding Defendant's alleged drug distribution. Therefore, because the Court's analysis in this motion is confined to the facts alleged in the Indictment, the Court does not find Defendant possessed a firearm for the improper purpose of drug trafficking.

Although Defendant has not clearly stated his purpose in owning the firearm (although he may have referred to the purpose of self-defense in his initial briefing (ECF No. 63-1 at 5)), the Court does not find it necessary for Defendant to show protected conduct, as there is ambiguity regarding whether Defendant must make such an affirmative showing at the first stage of the *Bruen* analysis. Some courts have found conduct to be an irrelevant inquiry for § 922(g)(1), given that the statute "regulates possession based on felon status" rather than based on "unlawful purpose." *Divine Zion*, 2024 WL 1975497, at *5–7; *see also Quailes*, 2023 WL 5401733, at *8 ("The crux of the [§] 922(g)(1) charge is that the mere possession of a firearm is a criminal act due to the defendant's status as a convicted felon. Accordingly, there cannot be a requirement for the defendant to state his purpose for possessing the firearm."); *United States v. Harper*, No. 21-0236, 2023 WL 5672311, at *9 (M.D. Pa. Sept. 1, 2023) (holding that "[o]ther than to address a Second Amendment challenge, there is no reason to require a defendant accused of illegal possession of a firearm pursuant to [§] 922(g) to state his purpose for possessing the firearm" as "the circumstances surrounding the possession do not impact the elements of the offense"). Therefore, the Court will not require Defendant to show a protected purpose for owning a firearm.

### 4. Whether § 922(g)(1) Is Analogous to the Nation's Historical Tradition

The Court proceeds to consider the second step of whether § 922(g)(1) is consistent with the nation's historical tradition of firearm regulation as applied to Defendant's circumstances. Section 922(g)(1) is analogous to numerous historical statutes, both in pre-revolutionary England and the United States, which authorized seizing firearms from persons deemed to be dangerous to the community. In comparing modern and historical firearm regulations, "whether [such] regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are 'central' considerations when engaging in an analogical inquiry." *Bruen*, 597 U.S. at 29. Courts have noted a tradition of disarming dangerous individuals beginning in Seventh Century England, where a law banned providing arms to another in the case of "strife." *United States v. Smith*, No. 23-00008, 2023 WL 6795807, at *4 (W.D. Pa. Oct. 13, 2023) (citing Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 Wyo. L. Rev. 249, 258 (2020)). This tradition continued into the Seventeenth Century, where the Militia Act of 1662 authorized the government to seize firearms from persons deemed "dangerous to the Peace of the Kingdom," a statute which continued after the right to bear arms was codified in the English Bill of Rights of 1689. *United States v. Hydock*, No. 23-205, 2023 WL 8810793, at *4 (E.D. Pa. Dec. 20, 2023) (citing Diarmuid F. O'Scannlain, *Glorious Revolution to American Revolution: The English Origin of the Right to Keep and Bear Arms*, 95 Notre Dame L. Rev. 397, 401, 405 (2019)). The American colonies and early republic enacted similar statutes authorizing disarmament from individuals deemed "disaffected and dangerous to the present Government." *Hydock*, 2023 WL 8810793, at *4 (citing Greenlee, 20 Wyo. L. Rev. at 264–65); *see also United States v. Ladson*, No. 23-161, 2023 WL 6810095, at *4 (E.D. Pa. Oct. 16, 2023). Examples of such laws include laws in Massachusetts

and New Hampshire forbidding carrying arms "in an aggressive and terrifying manner," and a law in Virginia disarming those "who ride, or go, offensively armed, in Terror of the People." *Smith*, 2023 WL 6795807, at *5 (citing Greenlee, 20 Wyo. L. Rev. at 262). By the mid-nineteenth century, "many jurisdictions required 'those threatening to do harm' to 'post bond before carrying weapons in public.'" *Hydock*, 2023 WL 8810793, at *4 (quoting *Bruen*, 597 U.S. at 55). Commentators in the nineteenth century argued that the government could properly restrict a person's right to bear arms where there is "just reason to fear that he purposes to make an unlawful use of them." *Hydock*, 2023 WL 8810793, at *4 (quoting *Bruen*, 597 U.S. at 56). Ultimately, "at the time of the ratification of the Second Amendment, alongside the several states' declarations of rights, the framers and the people understood that the right to keep and bear arms extended to all 'peaceable' citizens." *Smith*, 2023 WL 6795807, at *5 (citing Greenlee, 20 Wyo. L. Rev. at 266). Therefore, there is a historical tradition in this country of disarming individuals who are deemed threats to public order and peace.

Here, Defendant has previously been convicted of drug distribution on or within 1,000 feet of school property (ECF No. 67 at 3; ECF No. 1 at 1), making him analogous to the type of person who could be deemed a threat to the public order and peace who historically could have been disarmed as such. In *Rahimi*, the Supreme Court clarified that a court need not identify an identical founding era regulation to uphold a challenged law, rather, the Court should focus on "whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 144 S.Ct. at 1898. It is appropriate for the Court to apply analogical and contextual reasoning to compare present Second Amendment regulations with founding era laws. *Id.* Applying this standard, Courts in this circuit have repeatedly held that regulating the firearm possession of drug traffickers is analogous to the nation's historical tradition of firearm regulation.

16

*See United States v. Reichenbach*, No. 22-00057, 2023 WL 5916467, at *8–10 (M.D. Pa. Sept. 11, 2023) (finding § 922(g)(1), to the extent it dispossessed drug traffickers of firearms, to be historically analogous to founding era laws that disarmed certain groups for being dangerous and disruptive, as lawmakers have reasonably identified drug traffickers as a potentially dangerous and disruptive group); *Divine Zion*, 2024 WL 1975497, at *6 ("Considering the overwhelming body of historical analogues, precedent, and persuasive authority, the Court finds that § 922(g)(1), as applied, is constitutional based on the predicate convictions, almost all of which are for drug trafficking and the most recent of which is for unlawful possession of a handgun."); *Boone*, 2024 WL 965146, at *7 ("Considering the same historical analogues, courts in this circuit roundly agree that Section 922(g)(1) is consistent with this Nation's historical tradition of firearm regulation as applied to individuals, like Defendant, who have sustained prior felony convictions for drug trafficking."). Therefore, Defendant's prior conviction of drug distribution establishes him as a danger to society analogous to those individuals who would have historically been disarmed. Past governments engaged in such measures at their discretion, and for varying lengths of time, to preserve the peace, order, and security of the community, much as § 922(g)(1) does today. *Hydock*, 2023 WL 8810793, at *4 (citing O'Scannlain, 95 Notre Dame L. Rev. at 401, 405).

      Accordingly, Defendant's motion to dismiss the Indictment is also **DENIED** because the Court finds § 922(g)(1) is constitutional as applied to him based on the statute being consistent with the nation's historical tradition of firearm regulation, which included disarming individuals found by the legislature to be a threat to the public order and peace.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 63) the Indictment (ECF No. 30) for being unconstitutional on its face and as applied to Defendant is **DENIED**. An appropriate Order follows.

Date: July 23, 2024                                         */s/ Brian R. Martinotti*
                                                           **HON. BRIAN R. MARTINOTTI**
                                                           **UNITED STATES DISTRICT JUDGE**